## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

X.B., a minor, by and through his : No. 3:25cv756
parents and natural guardians,  :
C.B. and K.B.,  : (Judge Munley)
    **Plaintiffs**  :
        :
        :
  **v.**    :
        :
FRANCESCA MAZZEO;  :
WYOMING VALLEY WEST  :
SCHOOL DISTRICT;  :
SUPERINTENDENT DAVID TOSH; :
PRINCIPAL TIMOTHY NEEDLE; and :
DIRECTOR OF SPECIAL EDUCATION :
MARYA BARATTA,  :
    **Defendants**  :

## MEMORANDUM

A five-year-old special education student refused to clean up classroom toys at dismissal. When his teacher grabbed him by the wrist to walk him back to his seat, the student dropped to the floor and began crying. His teacher then grabbed him by the ankle and dragged him across the floor.

There were also two teachers' aides in the room. The incident did not sit well with them. They reported the incident. A municipal police detective investigated, and the teacher was placed on administrative leave during the investigation.

The county district attorney's office, however, did not proceed with criminal charges, and the school permitted the teacher to return to the classroom. That did not sit well with the student's parents, the plaintiffs here. In this action, they seek money damages from the teacher, the school district, the superintendent, the principal, and the director of special education. Their complaint spans thirteen counts, raising claims under federal and state law.

Defendants responded to plaintiffs' complaint with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). After review, defendants' motion will be granted in part and denied in part, and plaintiffs will be afforded an opportunity to file an amended complaint.

**Background**

As alleged, plaintiffs' child, X.B., was enrolled in the Wyoming Valley West School District and attended the State Street Elementary School during the 2024-2025 school year.[1] (Doc. 1, Compl., ¶¶ 1, 15, 39). X.B. entered school with several diagnoses: autism spectrum disorder, attention deficit hyperactivity

---

[1] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations in the amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). This memorandum also references portions of a police report from the Larksville Borough Police Department, which was quoted in the complaint, but not attached as an exhibit. Defendants supplied the police report as an exhibit to their motion to dismiss. (Doc. 11-1). In ruling on the motion to dismiss, the court may consider the police report as a document integral to or explicitly relied upon in the complaint. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citations omitted).

2

disorder, and global developmental delay. Id. ¶ 14. X.B. is considered non-verbal. Id. According to X.B.'s parents, he exhibits disruptive behaviors. Id.

X.B. was five years old at the time of the incident described in the complaint. Id. The school district placed him in an autistic support/special education classroom with other students between the ages of five and eight years old. Id. ¶ 15. A special education teacher in the classroom, Francesca Mazzeo, is the lead defendant in this case. Id. ¶¶ 2, 26–27.

On September 25, 2024, Defendant Mazzeo allegedly dragged X.B. across the floor of the classroom. Id. ¶ 34. The incident began at 3:00 PM, at dismissal time, after Mazzeo yelled at X.B. to put his toys away and get back to his desk. Id. ¶ 28. As alleged, X.B. did not immediately respond to his teacher's commands. Id. ¶ 29. So, she continued yelling in X.B.'s face. Id. ¶¶ 29–30. Mazzeo grabbed X.B. by the wrist, as if to pull him back to his desk. Id. This caused X.B. to become upset and start crying. Id. ¶¶ 30, 33. X.B. then dropped to the floor. Id. ¶ 30. Plaintiffs allege that X.B. laid on the floor in a very emotional state. Id. ¶ 31.

Defendant Mazzeo continued to communicate with X.B. both verbally and physically. Per the complaint, she grabbed X.B. by his foot and pulled him back to the area of his desk. Id. ¶ 34. Then, Mazzeo walked away. Id.

3

A teacher's aide came over to comfort X.B. Id. ¶ 35. At least two classroom aides reported the incident. Id. ¶¶ 38–42. The school resource officer, a detective for the Larksville Borough Police Department, opened a criminal investigation and obtained the aides' statements. Id. One aide reported:

> *….I was getting with another student in Mazzeo (sic) class and the aid for another was in the bathroom emptying a drink saw a student that dropped to the floor and was refusing to sit at his desk. When he dropped to the floor she grabbed the child by his foot and began to drag him on the floor while yelling at him. She was very frustrated and the look on her face showed it. I just feel the need to report this to someone and let someone know because it did not settle well with me.*

Id. ¶ 41 (as alleged).

The other aide reported:

> *at the end of the day on 9/25 around 3:00 p.m. Ms. Mazzeo the class room teacher was very frustrated and angry with the students and one of the students wanted to leave and she was telling (sic) at him. She went over to XB the student and was in his face. He started crying and he laid (sic) down on the floor and would (sic) get up and she was telling (sic) at him. Then she proceeded to drag him by his ankle on the floor while still yelling at him. The look on her face showed it (sic) I feel the need to report this. This did not settle well with me…*

Id. ¶ 42 (as alleged).

X.B. subsequently expressed fear of his teacher, Defendant Mazzeo. Id. ¶ 47. According to his parents, they observed changes in his behavior along with regressions in his emotional development — more tantrums and outbursts,

4

seclusion, mood problems, irritability and more pronounced oppositional and defiant behavior. Id. ¶ 37.  He was transferred to another elementary school within the school district. Id. ¶ 49.

Plaintiffs were initially unsure of Defendant Mazzeo's employment status following the incident. Id. ¶ 48.  According to the complaint, Mazzeo was placed on administrative leave. Id. ¶¶ 5, 50.  However, a first assistant district attorney did not approve criminal charges. (Doc. 11-1, Def. Ex. A., Police Report at ECF p. 6).  X.B.'s parents eventually learned that Defendant Mazzeo returned to the classroom and remains employed as a special education teacher at State Street Elementary School. (Doc. 1, Compl., ¶¶ 48, 51).

X.B.'s parents believe that the district and its administrators tried to sweep this incident under the rug. Id. ¶ 81.  This action seeks to hold Defendant Mazzeo, the Wyoming Valley West School District, and three administrators liable for X.B.'s injuries.  Those administrators are: 1) David Tosh, the district superintendent; 2) Timothy Needle, the principal of State Street Elementary School; and 3) Marya Baratta, the director of special education for the district. Id. ¶¶ 5–7.

The complaint raises thirteen claims, summarized in the following chart:

| Claim | Description | Defendant(s) |
|---|---|---|
| **Count I** | Fourteenth Amendment (42 U.S.C. § 1983) ("Section 1983") | All Defendants |
| **Count II** | Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA") | All Defendants |
| **Count III** | Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504" and "RA") | All Defendants |
| **Count IV** | Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") | Wyoming Valley West |
| **Count V** | Failure to Train and Supervise – Section 1983 | Wyoming Valley West |
| **Count VI** | Assault and Battery | Francesca Mazzeo |
| **Count VII** | Intentional Infliction of Emotional Distress ("IIED") | Francesca Mazzeo |
| **Count VIII** | Breach of Fiduciary Duty | Francesca Mazzeo |
| **Count IX** | Negligence | Francesca Mazzeo |
| **Count X** | Negligent Infliction of Emotional Distress ("NIED") | Francesca Mazzeo |
| **Count XI** | Vicarious Liability | Wyoming Valley West, Superintendent Tosh, Principal Needle, and S.E.D. Baratta |

| Count XII | Breach of Fiduciary Duty | Wyoming Valley West, Superintendent Tosh, Principal Needle, and S.E.D. Baratta |
|-----------|--------------------------|-------------------------------------------------------------------------------|
| Count XIII | Negligence | Wyoming Valley West, Superintendent Tosh, Principal Needle, and S.E.D. Baratta |

Defendants responded to the complaint with a comprehensive motion to dismiss. (Doc. 8). Their motion challenges each claim against each defendant.[2]

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes motions to dismiss for failure to state a claim. To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). While the court must accept all well-pled factual

---

[2] The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 since this is a civil action arising under the Constitution and laws of the United States. The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

7

allegations as true and draw all inferences in the plaintiff's favor, Phillips, 515 F.3d at 221, it need not credit "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555.

In deciding the motion, the court may consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  The court may also consider a document integral to or explicitly relied upon in the complaint without converting the motion to dismiss into a motion for summary judgment. Schmidt, 770 F.3d at 249 (3d Cir. 2014) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up).

The rationale for the integral documents exception is that "it is not unfair to hold a plaintiff accountable for the contents of documents [they] must have used in framing [their] complaint[.]" Id. at 250 (3d Cir. 2014) (citation omitted).  A plaintiff cannot "evade accountability" simply by not attaching the relied upon documents to their complaint." Id.; see also In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426 (citations omitted) (a plaintiff "cannot prevent a court from

looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.").

In their complaint, the plaintiffs quoted the witness statements of the aides assigned to X.B.'s classroom directly from the associated police report. (Doc. 1, Compl. ¶¶ 41–42). The witness statements from the police report are specifically relied upon by plaintiffs to establish that defendants' conduct violated state and federal law. Therefore, in ruling on the motion to dismiss, the court considers the entire police report, (Doc. 11-1), under the integral documents rule.

**Analysis**

Turning to plaintiffs' claims, their complaint advances requests for relief under Section 1983, the IDEA, Section 504 of the Rehabilitation Act, the ADA, and state tort law. The pleading requirements for federal civil rights claims and disability discrimination claims involve elements distinct from those encountered in state tort litigation.

Unlike a negligence claim, which may rest on *respondeat superior* or agency principles, a Section 1983 claim against a municipality requires a plaintiff to plead an additional layer of elements. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor"); McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [plaintiff] must identify a

custom or policy, and specify what exactly that custom or policy was."); Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (explaining that the pleading requirements for Section 1983 failure to train claims do not require allegations of an unconstitutional policy, but facts reflecting a deliberate and conscious choice).  Mere negligence by a state actor, without more, does not rise to the level of a constitutional violation. County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.") (citing Daniels v. Williams, 474 U.S. 327, 328 (1986)).  Thus, the familiar elements from a negligence claim, once alleged, will not suffice to state a claim under Section 1983.

Similarly, claims under Section 504 and the ADA require not just a showing of harm to a person with a disability, but intentional discrimination by reason of that disability. S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 261 (3d Cir. 2013).  And IDEA claims are governed by their own administrative framework, with exhaustion requirements and substantive standards (with or without companion ADA and Section 504 claims). See Fry v. Napoleon Cmty.

10

Schs., 580 U.S. 154, 165 (2017); 20 U.S.C. § 1415(*l*).  Negligence averments will not necessarily state a claim under the federal disability statutes.

After reviewing the complaint and the parties' arguments relative to defendants' motion to dismiss, the operative pleading states a Section 1983 claim and state intentional tort claims against Defendant Mazzeo.  However, as currently framed and formulated, the complaint does not otherwise adequately account for the substantive differences in the elements of the various claims asserted.  Accordingly, plaintiffs will be offered leave to amend to the extent specified herein.

### 1. Fourteenth Amendment Claims Under 42 U.S.C. § 1983 (Counts I and V)

Count I asserts a single cause of action for "Violations of the Fourteenth Amendment" against all five defendants — the teacher, the school district, the superintendent, the principal, and the director of special of education.[3]

Section 1 of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property,

---

[3] Section 1983 serves as the vehicle through which private citizens may seek redress for violations of federal constitutional rights committed by state officials. The statute serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002).  As such, Section 1983 provides the statutory tool for enforcing the Fourteenth Amendment. Lynch v. Household Finance Corp., 405 U.S. 538, 545 (1972).

without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  These clauses are separately considered due to their independent significance.  See Washington v. Glucksberg, 521 U.S. 702, 719–721 (1997) ("The Due Process Clause guarantees more than fair process..."); City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that... all persons similarly situated should be treated alike.").

The legal theories, elements of proof, and available defenses differ materially depending on whether the Fourteenth Amendment-based claim sounds in substantive due process, procedural due process, or equal protection, and depending on whether the defendant is a municipality, a supervisory official, or the individual actor alleged to have committed the constitutional violation.  As pled, the complaint advances equal protection and substantive due process claims against all defendants in seven short paragraphs, including an incorporation paragraph, a paragraph stating that X.B. has suffered damages, a causation paragraph, and other boilerplate. (Doc. 1, Compl., ¶¶ 53–59).  In other words, Count I collapses several distinct theories into a largely undifferentiated claim that the defendants violated the Fourteenth Amendment.  This pleading method is ineffective.

12

To start, the Federal Rules of Civil Procedure require a short and plain statement of the claim with "enough heft to 'sho[w] that the pleader is entitled to relief.' " Twombly, 550 U.S. at 557 (quoting FED. R. CIV. P. 8(a)(2)).  The purpose of Rule 8 is to provide defendants with fair notice of the claims against them and the grounds upon which those claims rest. Id. at 555 (citation omitted).  Rule 8 also demands more than unadorned, "the defendant-unlawfully-harmed-me" accusations. Iqbal, 556 U.S. at 678.  Where a single count encompasses multiple legal theories against multiple defendants without differentiating among them, it does not comply with these requirements.  These issues are apparent when considering the allegations supporting Count I.

Most prominently, the defendants named in the complaint occupy materially different positions, which have their own legal distinctions under federal civil rights law.  Wyoming Valley West is a municipal subunit in the Commonwealth of Pennsylvania.  See 53 PA. STAT. § 7101 (defining "municipality" to include school districts). Section 1983 claims against municipalities proceed pursuant to Monell and subsequent case law clarifying the boundaries of municipal liability. See 436 U.S. at 690.  Plaintiffs identify Superintendent Tosh, Principal Needle, and Special Education Director Baratta as Defendant Mazzeo's supervisors within the district.  Superintendent Tosh is identified as a policymaker.  These are legally significant designations.  As discussed below, additional allegations are

13

necessary to move forward with Section 1983 claims against these defendants in these roles.

*Municipal Liability* – As for the school district, a Section 1983 claim against a municipality must identify a policy or custom or a failure amounting to deliberate indifference, which is attributable to the governmental entity and is the moving force behind the constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). No school district policy or custom is identified with respect to Count I, even when the incorporation paragraph is considered.

Thirty paragraphs after the allegations in Count I, within their ADA claim, plaintiffs allege: "This is not the first time [Wyoming Valley West] has failed to protect the interests of a student with special needs. As noted above, a similar incident occurred involving a student with special needs in May 13 – 14, 2014." (Doc. 1, Compl. ¶ 78). Plaintiffs also allege: "This is now at least the second incident where a student with special needs was harmed as a result of [Wyoming Valley West's] custom of failing to institute and/or enforce policies and procedures that would have protected these students with special needs." Id. ¶ 80. According to the plaintiffs: "This pattern of physical abuse and use of aversive techniques against students with special needs shows that because these students had special needs they could simply 'sweep' these incidents 'under the rug.' " Id. ¶ 81.

14

These particular allegations are not incorporated into Count I. They are averred much later in the chain of paragraphs. Even still, allegations about two incidents ten years apart do not advance that there was a pattern or a custom of using abusive physical measures to redirect students with disabilities. Consequently, Count I will be dismissed against the school district as pled. To the extent that plaintiffs have facts to support that there were policies or ongoing customs of using inappropriate, abusive physical restraints or techniques in the autistic support or special education classrooms in the Wyoming Valley West School District, leave to amend will be provided for those facts to be pled.

*Failure to Train* – Additionally, plaintiffs assert a Section 1983 failure to train claim against Wyoming Valley West in Count V. Failure to train is a legal theory predicated upon deliberate indifference. Est. of Roman, 914 F.3d at 798 (citing City of Canton, 498 U.S. at 388). A plaintiff sufficiently pleads deliberate indifference for the purposes of failure to train claim by showing that: 1) municipal policymakers know that employees will confront a particular situation; 2) the situation involves a difficult choice or a history of employees mishandling; and 3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. Id. (citing Doe v. Luzerne Cnty., 660 F.3d 169, 180 (3d Cir. 2011); Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999)).

On this count, plaintiffs offer up negligence boilerplate and at least one contradiction. (Doc. 1, Compl. ¶¶ 90–95). Specifically, they allege:

> [Wyoming Valley West] failed to properly train and supervise their teachers, administrators, officers, agents, and/or employees as to mandated investigative requirements, which include: a) failing to take immediate and appropriate action to investigate or otherwise what occurred once informed of possible violations; b.) failing to take prompt and effective steps to end the abuse, prevent its recurrence, and address its effects; and d.) failing to take reasonable and necessary steps to protect X.B. and other minor students from abuses, violations and/or from suffering collateral harms and injuries as described above.

(Doc. 1, Compl. ¶ 93).

Elsewhere, however, plaintiffs allege that the system in place at State Street Elementary worked. That is, teachers' aides observed alleged misconduct by Defendant Mazzeo in the classroom; they reported the incident; the matter was referred to law enforcement; and an investigation occurred. Id. ¶¶ 38–42. Those allegations undercut any assertion that there was a policy or custom of tolerating Defendant Mazzeo's alleged behavior or a failure to train or supervise regarding what to do if a fellow staff member believed a teacher's conduct crossed a line. There are no other allegations clarifying or bolstering the failure-to-train theory of liability. That makes recovery on Count V presently implausible. But like with the Section 1983 claims pled in Count I, if the plaintiffs wish to refine

16

their failure-to-train theory and offer facts in support, leave to amend will be provided to do so.

*Supervisory Liability / Policymaker Liability / Personal Involvement* – Additionally, the complaint names Superintendent Tosh, Principal Needle, and Special Education Director Baratta as defendants. The complaint contains only generalized allegations that, by virtue of their respective positions, Tosh, Needle, and Baratta were responsible for overseeing Defendant Mazzeo. (Doc. 1, Compl. ¶¶ 5–7). These allegations are insufficient on their own to advance civil rights claims against these individuals.

Specifically, a Section 1983 claim against a supervisory official must allege personal involvement in the form of knowledge of and acquiescence in the constitutional violation. Rode v. Dellarciprete, 845 F.2d 1195, 1207–08 (3d Cir. 1988). That is, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" Id. at 1207 (citation omitted). Personal involvement can be shown "through allegations of personal direction or of actual knowledge and acquiescence[,]" but such allegations "must be made with appropriate particularity." Id. (citations omitted); see also Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020); Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015).

17

The requisite particularity is missing in plaintiffs' complaint regarding Tosh, Needle, and Baratta, even when all reasonable inferences are construed in plaintiffs' favor. Focusing on actual knowledge and acquiescence, plaintiffs allege as follows:

> 44. Upon information and belief, after reasonable opportunity for further investigation or discovery, discovery may likely reveal that Francesca Mazzeo's conduct was also widespread and known by staff and administrators of Defendant Wyoming Valley West School District including board members, principals and/or superintendents.
>
> 45. Upon information and belief, after reasonable opportunity for further investigation or discovery, we believe and aver that WVWSD has had prior incidents similar to the incident complained of herein before September 25, 2024 and failed to put policies and procedures in place to avoid the occurrence of an event like the one complained of herein.
>
> 46. Upon information and belief, the September 25, 2024 incident was not the first instance of alleged abusive behavior by Ms. Mazzeo.

(Doc. 1, Compl. ¶¶ 44–46).

To survive a motion to dismiss, a plaintiff must plead more than the possibility of relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The above allegations deal only in possibilities regarding Tosh, Needle, and Baratta's liability.

Specifically, the above paragraphs feature an abundance of limiting clauses. Paragraph 44 contains three different limiting clauses prior to an

18

allegation that Defendant Mazzeo's conduct was widespread and known by staff and administrators. Those caveats include: 1) "upon information and belief"; 2) "after reasonable opportunity for further investigation or discovery"; and 3) "discovery may likely reveal." Paragraph 45 contains the first two qualifying statements in this list regarding prior, similar incidents. Paragraph 46 uses the first limitation, "upon information and belief" regarding prior instances of abusive behavior by Defendant Mazzeo.

Consequently, even when these allegations are read in plaintiffs favor with the other facts alleged, they do not plausibly allege actual knowledge and acquiescence by Defendants Tosh, Needle, and Baratta.

As for the first limiting clause, "upon information and belief," the use of that phrase as a qualifier is generally acceptable where the facts are peculiarly within the opposing party's knowledge and the pleader has no reasonable means of access. See e.g. In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1418 (3d Cir. 1997) (relaxing the rule requiring particularity in pleading a fraud claim under Rule 9(b) where factual information is within the defendants' knowledge and control). In this case, where the plaintiffs are parents of a nonverbal student in a school district and are not themselves teachers, staff members, or administrators, the use of that qualifier is understandable, if not superfluous. See Nagel v. Pocono Med. Ctr., 168 F.R.D. 22, 24 (M.D. Pa. 1996) (citing FED. R. CIV.

19

P. 11(b)).  On the other hand, the allegations must still satisfy the Twombly–Iqbal standard.  The addition of "upon information and belief" to an allegation does not, in and of itself, make a claim plausible.

As spelled out above, Paragraphs 44–46 of the complaint all use the "upon information and belief" qualifier.  Focusing on Paragraph 46 first, that prefix precedes the allegation, "the September 25, 2024 incident was not the first instance of alleged abusive behavior by Ms. Mazzeo." (Doc. 1, ¶ 46).  The court thus looks to other allegations to inform Paragraph 46.  In that search, however, the only other relevant allegations include those with additional limiting clauses, like Paragraph 44 and Paragraph 45.

Paragraphs 44–45 further preface their substantive factual allegations with "after reasonable opportunity for further investigation or discovery" language.  This language is permissible under the federal rules. See FED. R. CIV. P. 11(b)(3).  That is, Rule 11(b)(3) allows counsel to allege that their factual contentions "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Id.  The rule exists to allow pleading where a plaintiff has some foundation for believing the facts exist but cannot confirm them yet.  Although permissible by rule, this leeway in pleading cannot be used to turn the possible into plausible.  When coupled with other qualifying language, Paragraphs 44 and 45 read as if plaintiffs proceed with only the sheer hope that

20

discovery might turn up something to hold Superintendent Tosh, Principal Needle, and Special Education Director Baratta liable.

Focusing on Paragraph 45 specifically, the "upon information…" and "after reasonable opportunity…" limiters lead into the allegation, "[Wyoming Valley West] has had prior incidents similar to the incident complained of herein before September 25, 2024 and failed to put policies and procedures in place to avoid the occurrence of an event like the one complained of herein." (Doc. 1, Compl. ¶ 45). The court again looks to other allegations to inform Paragraph 45 because a complaint must show entitlement to relief with its facts. Fowler, 578 F.3d at 211 (citing Phillips, 515 F.3d at 234–35).

As referenced above, the plaintiffs add details about prior incidents in a separate claim under a separate statute (ADA) against a separate defendant (Wyoming Valley West). Those allegations mention two incidents, ten years apart. The complaint does not include any allegations that the prior incident involved Defendant Mazzeo or that Defendants Tosh, Needle, or Baratta were administrators at that time (or that any of the individual defendants even worked in the district then). As observed, "the typical 'notice' case seems to involve a prior incident or incidents of misconduct by a specific employee…, specific notice of such misconduct to their superiors, and then continued instances of misconduct by the same employee[,]" Argueta v. U.S. Immigr. & Customs Enf't,

21

643 F.3d 60, 74 (3d Cir. 2011).  None of these allegations are present in the complaint.

Two qualifying clauses were used in Paragraph 45.  Plaintiffs used three to advance an allegation in Paragraph 44 that Defendant Mazzeo's conduct was "widespread and known by staff and administrators of Defendant Wyoming Valley West…including board members, principals and/or superintendents." In addition to the other caveats discussed above, plaintiffs added the additional limiting clause, "discovery *may* likely reveal." (Doc. 1, Compl. ¶ 44) (emphasis added).  The "may" language within a qualifier after two other limiting clauses turns Paragraph 44 into equivocation and suggests that the widespread knowledge allegation is aspirational.  Plaintiffs must plead enough facts to raise a reasonable expectation that discovery will reveal evidence of the alleged civil rights violations, not plead the hope of discovery to obtain those facts in the first instance. Cf. Twombly, 550 U.S. at 556; Phillips, 515 F.3d at 234.  The lavish use of limiting phrases aside, the allegations in the complaint are insufficient to establish personal involvement by Defendants Tosh, Needle, and Baratta.

Plaintiffs further allege that Tosh, as superintendent, was a policymaker for the purposes of Section 1983 liability.  (Doc. 1, Compl. ¶ 5).  This theory of liability is underdeveloped in the complaint.

To establish a claim against a policymaker under Section 1983, "a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." Chavarriaga, 806 F.3d 210, 223 (3d Cir. 2015). "Under Pennsylvania law, a school board may be the final policymaker with respect to some actions, while the school superintendent may be the final policymaker with regard to other actions." G.S. v. Penn-Trafford Sch. Dist., 20-3281, 2023 WL 4486667, at *3 & n. 29 (3d Cir. July 12, 2023) (citing McGreevy v. Stroup, 413 F.3d 359, 368–69 (3d Cir. 2005)). However, even accepting Defendant Tosh's high level of authority as a school superintendent, the requisite policymaker allegations do not appear in the complaint regarding this defendant.

Plaintiffs also allege that Defendant Needle was, as the principal, the person in charge of the school where Defendant Mazzeo worked as a special education teacher. (Doc. 1, Compl., ¶ 6). Plaintiffs proceed as if simply being present in the same school will attach Section 1983 liability to Principal Needle. However, being "in the vicinity" of an alleged civil rights violation by a subordinate when that violation occurred is not enough to support a civil rights claim against the supervisor. See McKenna v. City of Philadelphia, 582 F.3d 447, 460 (3d Cir. 2009).

23

As for Defendant Baratta, the only allegation advanced in the complaint was that she was the district director of special education. (Doc. 1, Compl., ¶ 7). Based on her position, Defendant Baratta may possess the requisite authority for Section 1983 liability in the event that authority was delegated to her by the school board and/or superintendent. See L.S. v. Hanover Area Sch. Dist., No. 3:22CV234, 2024 WL 2393038, at *19, n.23 (M.D. Pa. May 23, 2024) (denying motion to dismiss Section 1983 claim against an administrator tasked with managing the district's prekindergarten program given inferences that she also managed federal and state funding sources for the program, among other responsibilities). But such facts have not been pled.

Thus, for the above reasons, the Section 1983 claims against Defendants Tosh, Needle, and Baratta in Count I will be dismissed. Plaintiffs, however, will be afforded leave to amend on the deficiencies addressed in this memorandum.

*Mazzeo's Liability* – With those matters addressed, that leaves the merits of the Fourteenth Amendment claims referenced in Count I against Defendant Mazzeo. Based on an amalgamation allegation that "[d]efendants conduct in failing to provide X.B. with a free, appropriate, public education constitutes an unlawful discrimination against the Plaintiff and other autistic support/special needs children in violation of the Equal Protection Clause of the 14th Amendment and…the substantive due process right to bodily integrity[,]" (Doc. 1, Compl. ¶

24

54), the court will briefly address the plaintiffs' equal protection and substantive due process claims as they relate to Defendant Mazzeo.

The Equal Protection Clause is a directive to the states that all persons similarly situated should be treated alike. Children's Health Def., Inc. v. Rutgers, the State Univ. of New Jersey, 93 F.4th 66, 83 (3d Cir. 2024), cert. denied, 144 S. Ct. 2688 (2024) (citing Artway v. Att'y Gen. of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996); Cleburne, 473 U.S. at 439. To succeed with a Section 1983 claim for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination and demonstrate that their son received different treatment from that received by other individuals similarly situated. Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009). Persons are similarly situated under the Equal Protection Clause "when they are alike 'in all relevant respects.' " Harvard v. Cesnalis, 973 F.3d 190, 205 (3d Cir. 2020) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). At the pleading stage, "alike in all relevant respects" must be adequately alleged with more than conclusory assertions. Children's Health Def., Inc., 81 F.3d at 84 (cleaned up).

The court also considered whether the complaint advances a class-of-one theory. The Equal Protection Clause can protect a single individual who has been intentionally treated differently from others similarly situated where there is no

rational basis for differential treatment.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  To state a claim under a class of one theory, a plaintiffs must allege that: 1) the defendant treated X.B. differently from others similarly situated; 2) the defendant did so intentionally, and 3) there was no rational basis for the difference in treatment.  Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 156 (3d Cir. 2018); Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

Against these elements, the complaint falls short of advancing a plausible equal protection claim.  X.B. was assigned to an autism support classroom with Defendant Mazzeo.  Every student in X.B.'s class was a child with a disability. To state an equal protection claim on these facts, plaintiffs would need to allege either that Mazzeo singled X.B. out from among her other special education students for disfavored treatment on the basis of his particular disability, or that the teacher treated her special education students as a class less favorably than non-disabled students in comparable circumstances.  The complaint does not do either of these things.  Rather, plaintiffs' single-act allegations do not include a factual basis to even infer that the act was motivated by discriminatory animus rather than some other non-discriminatory impulse.

On the other hand, at least one viable Section 1983 claim emerges from plaintiffs' mashup of Fourteenth Amendment legal theories: a substantive due process claim against Defendant Mazzeo based on the alleged momentary use

26

of excessive force.  See Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 172 (3d Cir. 2001).  Momentary uses of force by teachers or other public school officials are evaluated using a shocks-the-conscious standard. Gottlieb, 272 F.3d at 170–75; see also Rogers v. Pocono Mtn. Sch. Dist., No. 3:21-CV-02072, 2026 WL 801406, at *6 (M.D. Pa. Mar. 23, 2026) (Mehalchick, J).  Negligence is not the standard for a constitutional due process claim. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 848 (1998).

The "shocks the conscience" standard has four elements: 1) whether there was a pedagogical justification for the use of force; 2) whether the force utilized was excessive to meet the legitimate objective in this situation; 3) whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm; and 4) whether there was a serious injury. See Gottlieb, 272 F.3d at 173.

Here, the facts alleged in the complaint are sufficient to nudge a substantive due process claim against Defendant Mazzeo over the line from possible to plausible.  The witness statements in the police report carry particular weight: paraprofessionals, who are accustomed to working in an environment where physical redirections occur more often, promptly reported Mazzeo's conduct and told the police, in their own words, that what she did to X.B. did not "settle well" with them. (Doc. 11-1, Def. Ex. A., Incident Report at ECF p. 5).

27

Those statements support inferences that there was no pedagogical justification for the degree of force used in that situation, and that the force was excessive and motivated by a purpose to harm rather than any legitimate interest. X.B.'s age and characteristics reinforce those inferences. As for seriousness of injury, plaintiffs allege that their son, X.B., experienced regressions in his emotional development, including more pronounced oppositional and defiant behavior. Based on X.B.'s diagnoses, these outcomes were the exact opposite of the learning goals presumably established for this child in the special education setting. Consequently, when taken together, these allegations state a plausible substantive due process claim against Defendant Mazzeo.

In reaching the above conclusion, the court considered the full police report, including the notation of the Luzerne County District Attorney's office reviewing the case and not pressing charges against Defendant Mazzeo. Defendants' reliance upon the decision not to prosecute is not enough to stop the substantive due process claim against Mazzeo before discovery. Here, plaintiffs have alleged excessive physical force directed at a particularly vulnerable child without legitimate justification, which is sufficient to allege the kind of conscience-shocking behavior that substantive due process requires. As alleged and documented in a police report, Defendant Mazzeo's conduct appears to have

28

caused a visceral reaction in her co-workers.  Accordingly, the motion to dismiss will be denied in this respect.

*Leave to Amend* – The above analysis reflects that at least one Section 1983 claim will move forward, a substantive due process claim against Defendant Mazzeo. The other Section 1983 theories of liability against the other defendants are subject to dismissal.

After careful consideration of the circumstances alleged, it is not out of the realm of possibilities that plaintiffs can successfully replead their other Fourteenth Amendment theories against the other defendants with some additional factual allegations.  Therefore, plaintiffs will be provided leave to amend their Section 1983 claims. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

## 2. IDEA Claims (Count II)

Count II asserts a claim under the Individuals with Disabilities Education Act, ("IDEA") against all five defendants.  It will be dismissed with prejudice based on the defendants' motion.

The IDEA offers federal funds to states in exchange for a commitment to furnish the core guarantee of a free appropriate public education or a FAPE to all children with certain physical or intellectual disabilities. See A.J.T. by & through A.T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279, 605 U.S. 335, 338 (2025)

(quoting <u>Fry v. Napoleon Cmty Sch.</u>, 580 U.S. 154, 158 (2017); 20 U.S.C. § 1412(a)(1)(A)). "[O]nce a State accepts the IDEA's financial assistance, it must provide 'special education and related services,' including 'instruction' tailored to meet a child's 'unique needs' and sufficient 'support services' to permit the child to benefit from that instruction." <u>Id.</u> (quoting <u>Fry</u>, 580 U.S. at 158; 20 U.S.C. § 1401(9), (26), (29)) (some quotation marks omitted).  Specifically, school districts must: 1) timely identify students who need special education services and 2) provide those students with a FAPE. <u>B. S. M. v. Upper Darby Sch. Dist.</u>, 103 F.4th 956, 963 (3d Cir. 2024) (citing <u>D.K v. Abington Sch. Dist.</u>, 696 F.3d 233, 244 (3d Cir. 2012)).

*Claims Against Defendants Mazzeo, Tosh, Needle, and Baratta* – As a threshold matter, the individual defendants — the teacher, principal, superintendent, and director of special education — are not proper parties to an IDEA claim.  The IDEA imposes obligations on "state educational agencies" and "local educational agencies," not on individual school employees. 20 U.S.C. §§ 1412, 1413, 1415(a).  Under the statute, the term "local educational agency" is defined as a public board of education or other public authority legally constituted within a State for administrative control or direction of public elementary or secondary schools. <u>Id.</u>, § 1401(19).  The IDEA's procedural section frames disputes as between parents and "the local educational agency," with no

provision for claims against individual employees like teachers or administrators. See id., § 1415(f), (g), (l). Because no amendment can change the reach of the statute, the IDEA claim is dismissed with prejudice as to the individual defendants.

*Claims Against Defendant Wyoming Valley West* – As to Wyoming Valley West, the IDEA claim fails because plaintiffs have not exhausted administrative remedies and because the plaintiffs seek remedies that the IDEA cannot provide.

The IDEA "sets forth a number of administrative procedures for children, their parents, teachers, and school districts to follow when disputes arise." Luna Perez v. Sturgis Pub. Sch., 598 U.S. 142, 144 (2023). Plaintiffs must exhaust the administrative process set forth in a "detailed statutory scheme" before resorting to a civil action in federal court. See T.R. v. Sch. Dist. of Philadelphia, 4 F.4th 179, 184–85 (3d Cir. 2021) (citations omitted); see also 20 U.S.C. § 1415(b)(6)–(7), (e), (f), (g), (i)(2). The language of the IDEA makes clear that Congress intended plaintiffs to complete the administrative process before filing in federal court. See D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 274–75 (3d Cir. 2014) (discussing Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)). And "courts must enforce the rules of exhaustion." Id.

Here, plaintiffs do not allege that they pursued any administrative remedy before filing this action. Instead, paradoxically, they assert that they are not

31

required to exhaust administrative remedies because they seek money damages for physical assault, bodily integrity violations, emotional trauma and purposeful discrimination with respect to the IDEA claim.[4] (Doc. 13, Pl. Br in Opp. at 9).  But the IDEA itself does not provide for recovery of compensatory damages.[5]  See Luna Perez, 598 U.S. 142, 147 (2023); Chambers ex rel. Chambers, 587 F.3d at 185–86.  So regardless of whether they exhausted or did not exhaust their IDEA claim, plaintiffs seek a form of relief that the statute does not provide and not any other form of relief.  The IDEA claim will be dismissed with prejudice for non-exhaustion of administrative remedies and because it does not allow for the recovery of compensatory damages.

---

[4] The exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. Fry, 580 U.S. at 168.  Without a doubt, plaintiffs use the phrase "free appropriate public education" throughout their complaint. (Doc. 1, ¶¶ 54, 61, 83). However, the facts connecting the alleged physical abuse to denial of FAPE are not fully fleshed out in the operative pleading.  In pleading their tort damages, plaintiffs touch upon substantive educational harm (regression, school avoidance), but do not indicate whether X.B. missed time from school.  There are no details about X.B.'s individualized education plan or behavioral plan.  Instead, plaintiffs allege that X.B. was moved from State Street Elementary School to another elementary school within Wyoming Valley West after he displayed regression and school avoidance. (Doc. 1, Compl. ¶ 48). That averment reflects collaboration between the school and the parents regarding X.B.'s educational needs, not denial of FAPE.

[5] Under the IDEA, "a district court is authorized to grant such relief as the court determines is appropriate, including attorneys' fees, reimbursement for a private educational placement, and compensatory education." G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601, 608 (3d Cir. 2015) (cleaned up). Plaintiffs are not seeking any of these remedies in this matter. They do not request compensatory education, reimbursement for out-of-pocket expenses, modification of X.B.'s individualized education plan, or a change in placement. They seek only money damages for the physical incident, which is the relief that IDEA does not provide.

Different statutes cover the type of remedies sought here — Title II of the ADA and Section 504 of the Rehabilitation Act. B. S. M. v. Upper Darby Sch. Dist., 103 F.4th 956, 963 (3d Cir. 2024) (citing Fry, 580 U.S. at 170–71); see also 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2)).  Plaintiffs' complaint advances claims under Section 504 and the ADA.  Those claims are addressed next.

### 3. Section 504 and ADA Claims (Counts III and IV)

Counts III and IV assert claims under Section 504 of the Rehabilitation Act and Title II of the ADA, respectively. Count III is asserted against all defendants and Count IV is asserted against the district alone.  Because the substantive standards governing these claims are the same, they will be evaluated together. See Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 288 (3d Cir. 2019); S.H., 729 F.3d at 260.

Section 504 prohibits discrimination by programs and activities receiving federal financial assistance. 29 U.S.C. § 794(a). The school district is the recipient of federal funds; the individual defendants are not.  Count III is therefore dismissed with prejudice as to the teacher, the principal, the superintendent, and the director of special education.  No amended complaint can create a cause of action where the statute does not provide one. See Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002).

33

As to Wyoming Valley West, the Section 504 and ADA claims also fall short of plausibility.  To state a claim under both statutes, the plaintiffs must demonstrate that: 1) X.B. was a qualified individual; 2) with a disability; and 3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; 4) by reason of his disability. Durham v. Kelley, 82 F.4th 217, 225 (3d Cir. 2023) (citing Haberle v. Troxell, 885 F.3d 170, 178 (3d Cir. 2018)); Chambers ex rel. Chambers, 587 F.3d at 189 (citation omitted).

In a case such as this, "[w]here compensatory damages are sought, a plaintiff must also show intentional discrimination under a deliberate indifference standard." Durham, 82 F.4th at 225. (citations omitted). "To satisfy the deliberate indifference standard, a plaintiff 'must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated ..., and (2) failure to act despite that knowledge.' " D.E., 765 F.3d at 269 (quoting S.H., 729 F.3d at 265)

Plaintiffs allege that Defendant Mazzeo dragged their child across the floor of a special education classroom.  It may be reasonably inferred that she did so as the result of his disabilities or at least the manifestations of his disabilities. That is, it is plausible that Mazzeo's alleged conduct was a response to behavior that would have been handled differently had X.B. not been disabled.  But the

34

complaint fails to make all the required connections. The complaint does not allege that any district official with authority to address disability discrimination was aware of and was deliberately indifferent to a pattern of such conduct for substantially the same reasons discussed above in Section 1. The district's liability turns on deliberate indifference, and deliberate indifference requires knowledge. That knowledge has not been pled in a manner setting forth plausible Section 504 and ADA claims. Defendants' motion to dismiss will thus be granted.

*Leave to Amend* – The Section 504 claims against the individual defendants will be dismissed with prejudice. The Section 504 and ADA claims against the district will be dismissed without prejudice. The court cannot rule out that plaintiffs will be able to set forth plausible Section 504 and ADA claims against the district with facts supporting that the district knew and was deliberately indifferent to a strong likelihood that its conduct would result in disability-based discrimination. Leave to amend these claims against the district will be provided.

### 4. State Law Claims (Counts VI to XII)

The complaint also asserts claims against Defendant Mazzeo under state law for: 1) assault and battery (Count VI); 2) breach of intentional infliction of emotional distress (Count VII); 3) breach of fiduciary duty (Count VIII); 4)

negligence (Count IX); and 5) negligent infliction of emotional distress (Count X).

As for the remaining defendants (Wyoming Valley West, Superintendent Tosh,

Principal Needle and Special Education Director Baratta), plaintiffs advance

claims for: 1) vicarious liability (Count XI); 2) breach of fiduciary duty (Count XII);

and 3) negligence (Count XIII).

Defendants move to dismiss based on the immunities provided by the

Pennsylvania Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. §§ 8541–

8564 ("PSTCA").[6]  Here, the applicability of the PSTCA is apparent and many of

the state law claims will be dismissed.

The PSTCA provides local agencies and their employees with broad

immunity from tort liability for injuries caused by acts of the agency or its

employees. 42 PA. CONS. STAT. § 8541. This immunity extends to individual

employees acting within the scope of their duties unless one of the eight

enumerated statutory exceptions applies. 42 PA. CONS. STAT. § 8542(b).  None of

the enumerated exceptions encompasses the conduct alleged in this case. The

plaintiffs' complaint does not allege that X.B.'s injuries arose from the care,

---

[6] The immunity provided by the PSTCA is an affirmative defense. See Gale v. City of Philadelphia, 86 A.3d 318, 319, n. 1 (Pa. Commw. Ct. 2014).  Thus, that defense must be apparent from the face of the complaint for the court to consider the defendants' PSTCA immunity arguments.  Because this case involves tort claims against a Pennsylvania public school district, defenses under the PSTCA are "manifest in the complaint itself." Cf. In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n. 6 (3d Cir. 2016) (discussing the application of federal preemption defenses at the Rule 12(b)(6) stage). Accordingly, the court will consider the PSTCA defense on a motion to dismiss.

custody, or control of real property, the operation of a vehicle, the condition of streets or sidewalks, sexual abuse, or any other category specified in Section 8542(b).

Accordingly, the negligence-based claims — Count IX (negligence against the teacher), Count X (negligent infliction of emotional distress against the teacher), Count XI (vicarious liability against the district and administrators), and Count XIII (negligence against the district and administrators) — are barred by the PSTCA and will be dismissed with prejudice. To the extent that a breach of fiduciary duty claim is cognizable in the teacher-student context under Pennsylvania law (which it likely is not), Counts VIII and XII would be subject to dismissal under the PSTCA on the same grounds. These counts are dismissed with prejudice, as immunity cannot be cured by amendment.

On the other hand, the PSTCA does not shield an employee from liability for conduct that constitutes a crime, actual fraud, actual malice, or willful misconduct. 42 PA. CONS. STAT. § 8550. The complaint alleges conduct that, if proven, could constitute willful misconduct within the meaning of Section 8550. Accordingly, the assault and battery claim (Count VI) and the intentional infliction of emotional distress claim (Count VII) against Defendant Mazzeo survive the motion to dismiss.

This case started with a thirteen-count complaint against five defendants. As a result of the motion to dismiss, plaintiffs' claims are considerably narrower. The Section 1983 claims will be dismissed as to the school district for failure to allege a policy or custom or deliberate indifference in the failure-to-train context. As to Superintendent Tosh, Principal Needle, and Special Education Director Baratta, the Section 1983 claims will be dismissed for failure to allege personal involvement. Regarding the equal protection claim asserted against all defendants, the motion to dismiss will also be granted. Dismissal of the Section 1983 claims will be without prejudice.

The federal claims under the IDEA, Section 504, and the ADA will be dismissed in various respects. The IDEA claim will be dismissed against all defendants with prejudice for failure to exhaust a remedy the statute ultimately cannot provide. The Section 504 claims against the individual defendants will be also dismissed with prejudice. However, the Section 504 and ADA claims will be dismissed without prejudice as to Defendant Wyoming Valley West.

The state law claims will be dismissed with prejudice to the extent they are barred by the Political Subdivision Tort Claims Act. What remains under state law are the assault and battery and intentional infliction of emotional distress claims against Defendant Mazzeo.

38

Leave to amend will be afforded where the court has concluded amendment will not be futile. If plaintiffs proceed with an amended complaint, that pleading must reflect a good faith effort to address the pleading deficiencies detailed in this memorandum rather than a repackaging of the same allegations with minor editorial changes. As for any revised Section 1983 claims, plaintiffs will be directed to, in separate counts, specify the constitutional provision invoked, the theory of liability, the factual basis, and the particular defendant or defendants against whom each claim is asserted.

## Conclusion

Accordingly, for the reasons set forth above, the defendants' motion to dismiss is granted in part and denied in part. An order corresponding with the details of this memorandum follows.

Date: 3/31/26          BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

39